UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROSA ELESCANO, JOSE CARLOS ACOSTA, KATERINNE
PANIZO, and JOHN OSORTO,

                        Plaintiffs,                    **COMPLAINT**

  -against-                                    No. 23-175

K&P FACILITIES MAINTENANCE, INC., AND CARLOS    **Jury Trial Demanded**
ESPINOZA,

                        Defendants.
------------------------------------------------------------------------X

Plaintiffs, Rosa Elescano, Jose Carlos Acosta, John Osorto, and Katerinne Panizo, by and through their attorneys, FAMIGHETTI & WEINICK, PLLC, allege upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This is a civil action alleging Defendants' violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., and the New York State Labor ("NYLL"), Article 6 § 190 *et. seq.*, to recover, *inter alia*, unpaid wages, overtime compensation, liquidated damages, statutory damages, and other penalties owed to Plaintiffs by Defendants.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Supplemental jurisdiction is invoked over State and local causes of action pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, occurred in this district.

## PARTIES

4. Elescano is an individual residing in the County of Orange, State of New York.

5. Acosta is an individual residing in the County of Orange, State of New York.

6. Panizo is an individual residing in the County of Orange, State of New York.

7. Osorto is an individual residing in the County of Orange, State of New York.

8. K&P Facilities Maintenance, Inc. ("K&P"), is a Connecticut corporation which conducts business in the States of New York and Connecticut.

9. K&P provides commercial cleaning, janitorial, and custodial services for businesses in New York and Connecticut and advertises in those geographic locations as providing services there.

10. K&P, specifically, provides cleaning services such as window washing, disinfecting, deep kitchen cleaning, and floor waxing, among other services.

11. K&P advertises that it provides such services 24 hours per day, seven days per

week.

12.     K&P earned more than $500,000 in revenue per year during the relevant time periods.

13.     Carlos Espinoza is an owner of K&P and a resident of the State of New York.

14.     Espinoza has the authority to hire and fire employees, set employee work schedules, set employee pay, and to otherwise set the terms and conditions of employment for K&P employees.

15.     Espinoza exercised such authority with respect to Plaintiffs.

**FACTS**

**Plaintiff Panizo**

16.     In the fall 2017, Defendants hired Panizo as a cleaner.

17.     Panizo's responsibilities included using soaps, detergents, brushes, mops and other cleaning materials and tools (which traveled through interstate commerce to be purchased by K&M and which were used by Panizo) to clean buildings across New York's Hudson Valley and the City of New York.

18.     Thus, Panizo performed manual labor, performing the physical work of cleaning

commercial buildings such as hospitals and offices.

19. Defendants assigned Panizo to work a varied work schedule, but throughout her employment Defendants generally assigned Panizo to work six day per week, Monday through Saturday.

20. Occasionally, Defendants required Panizo to work on Sundays, also.

21. Panizo regularly reported to work by 5:00a.m. and finished work at 4:00p.m. or 5:00p.m.

22. Oftentimes, when Panizo finished work in the evening, Defendants would ask Panizo and others, if they wanted to work an extra evening shift.

23. On such occasions, Panizo would continue working until 1:00a.m.

24. In other words, Panizo worked at least fifty hours per workweek, but as many as 96 hours in a workweek.

25. An example of one typical workweek is that during week of August 29, 2020 to September 5, 2020, Panizo worked Saturday through Wednesday from 2:00p.m. to 11:00p.m. each day.

26. Thus, during this work-week, Panizo worked 45 hours, but was not paid overtime for the five hours worked more than 40 that week.

27. When Panizo reported to work, "Raquel" would record Panizo's start time on a piece of paper.

28. During the summer of 2018, Defendants assigned Panizo to work assignments in New York City.

29. During this assignment, Defendants picked up Panizo at her house at 4:00a.m. and drove her to the work location in New York City.

30. Panizo physically worked until approximately 11:00p.m., then Defendants drove Panizo to her home in Orange County, arriving at approximately 1:00a.m., in time to sleep for just a few hours before repeating the same work schedule the next day.

31. While working in New York City, Defendants paid to Panizo $15.00 per hour for all hours worked.

32. While working outside New York City, Defendants paid to Panizo $14.00 per hour for all hours worked.

33. Regardless of work location, Defendants did not pay to Panizo overtime for hours

worked more than 40 in a workweek, nor did Defendants pay to Panizo spread-of-hours pay.

34. At no time did Defendants provide to Panizo a notice of rate of pay, nor did they provide to Panizo wage statements upon payment of wages.

35. On March 21, 2021, Panizo stopped working for Defendants.

**Plaintiff Elescano**

36. In September 2017, Defendants hired Elescano as a cleaner.

37. Elescano's responsibilities included using soaps, detergents, brushes, mops and other cleaning materials and tools (which traveled through interstate commerce to be purchased by K&M and which were used by Elescano) to clean buildings across New York's Hudson Valley and the City of New York.

38. Thus, Elescano performed manual labor, performing the physical work of cleaning commercial buildings such as hospitals and offices.

39. Defendants assigned Elescano to work a varied work schedule, but throughout her employment Defendants generally assigned Elescano to work five to six days per week, Monday through Friday.

40. Occasionally, Defendants Elescano to work on Sundays, also.

41. Elescano regularly reported to work by 5:00a.m. and finished work by 12:00p.m.

42. Oftentimes, however, Elescano would work to as late as 8:00p.m., 9:00p.m., or 10:00p.m.

43. Thus, Elescano worked at least sixty hours per workweek, but as many as 96 hours in a workweek.

44. An example of one typical workweek is that during week of August 8, 2021 to August 14, 2021, Elescano worked Sunday through Friday, from 7:00a.m. to 2:30a.m.

45. Thus, Elescano worked more than 114 hours, but was paid only $15.00 per hour for each hour worked.

46. In other words, Defendants did not pay an overtime premium to Elescano for this workweek.

47. When Elescano reported to work, "Raquel" would record Elescano's start time on a piece of paper.

48. Defendants did not pay to Elescano overtime for hours worked more than 40 in a workweek, nor did Defendants pay to Elescano spread-of-hours pay.

49. At no time did Defendants provide to Elescano a notice of rate of pay, nor did they provide to Elescano wage statements upon payment of wages.

50. In August 2021, Elescano stopped working for Defendants.

**Plaintiff Jose Carlos Acosta**

51. In February 2017, Defendants hired Acosta as a cleaner.

52. Acosta's responsibilities included using soaps, detergents, brushes, mops and other cleaning materials and tools (which traveled through interstate commerce to be purchased by K&M and which were used by Acosta) to clean buildings across New York's Hudson Valley and the City of New York.

53. Thus, Acosta performed manual labor, performing the physical work of cleaning commercial buildings such as hospitals and offices.

54. Defendants assigned Acosta to work a varied work schedule, but throughout his employment, Defendants generally assigned Acosta to work six days per week, Monday through Saturday.

55. Acosta regularly reported to work by 6:00a.m. and finished work at 8:00p.m.

56. Thus, Acosta worked at least 84 hours per workweek, but was not paid an overtime premium for hours worked more than 40 in a workweek.

57. An example of one typical workweek is that during week of August 5, 2019 to August 9, 2019, Acosta worked 6:00a.m. to 8:00p.m.

58. Acosta was paid a total of $940.00 for this workweek, but was not paid an overtime premium for the hours worked over 40.

59. When Acosta reported to work, "Raquel" would record Acosta's start time on a piece of paper.

60. Defendants did not pay to Acosta overtime for hours worked more than 40 in a workweek, nor did Defendants pay to Acosta spread-of-hours pay.

61. Rather, Defendants paid to Acosta a flat rate of between $800 to $900 in cash, each week.

62. At no time did Defendants provide to Acosta a notice of rate of pay, nor did they provide to Acosta wage statements upon payment of wages.

63. In October 2020, Defendants terminated Acosta for reasons untold to him.

9

64. Acosta, however, has observed that Defendants often terminate their employees after three years, telling them that there is no more work.

65. Acosta's understanding of this practice is that Defendants believe this rotation of employees will help conceal their unlawful wage pay and employment practices.

**Plaintiff John Osorto**

66. In February 2020, Defendants hired Osorto as a cleaner.

67. Osorto's responsibilities included using soaps, detergents, brushes, mops and other cleaning materials and tools (which traveled through interstate commerce to be purchased by K&M and which were used by Osorto) to clean buildings across New York's Hudson Valley and the City of New York.

68. Thus, Osorto performed manual labor, performing the physical work of cleaning commercial buildings such as hospitals and offices.

69. Defendants assigned Osorto to work a varied work schedule, but throughout his employment Defendants generally assigned Osorto to work five days per week, Monday through Friday.

70. Osorto regularly reported to work by 7:00a.m. or 8:00a.m. and finished work between 7:00p.m. to 10:00p.m.

71. Thus, Osorto worked at least fifty-five hours per workweek, but as many as 75 hours in a workweek.

72. An example of one typical workweek is that during week of April 6, 2020 to April 10, 2020, Osorto worked Monday through Friday from 7:00a.m. to 8:00p.m. each day.

73. Thus, Osorto worked more than 65 hours, but was paid $812.50 for all hours worked, without receiving an overtime premium for the hours worked more than 40.

74. In other words, Defendants did not pay an overtime premium to Osorto for this workweek.

75. When Osorto reported to work, "Raquel" would record his start time on a piece of paper.

76. Defendants did not pay to Osorto overtime for hours worked more than 40 in a workweek, nor did Defendants pay to Osorto spread-of-hours pay.

77. At no time did Defendants provide to Osorto a notice of rate of pay, nor did they provide to Osorto wage statements upon payment of wages.

78. In January 2021, Osorto stopped working for Defendants.

## FIRST CLAIM
(FLSA - OVERTIME)

79. Defendants have failed to pay Plaintiffs overtime premium for all hours worked in excess of forty hours in a workweek, in violation of the FLSA.

80. Defendants' conduct was willful, intentional, and/or not in good faith as evidenced by, among other things, Defendants' efforts to conceal their illegal practices by failing to provide lawful wage notices to employees.

81. Additionally, Defendants maintained a policy and practice of terminating and/or non-renewing the employment of employees after three years of service in an effort to conceal their unlawful wage payment practices and to limit their liability for same.

82. Moreover, Defendants altered Plaintiffs' pay rate depending on work location, to meet minimum wage for such locations, showing Defendants' knowledge of wage laws, thus, the refusal to pay overtime can only be reasonably interpreted as willful.

## SECOND CLAIM
(NYLL - Overtime)

83. Defendants have failed to pay Plaintiff an overtime premium for all hours worked in excess of forty hours in a workweek, in violation of the NYLL.

84. Defendants' conduct was willful, intentional, and/or not in good faith as evidenced by, among other things, Defendants' efforts to conceal their illegal practices by failing to provide lawful wage notices to employees.

85. Additionally, Defendants maintained a policy and practice of terminating and/or non-renewing the employment of employees after three years of service in an effort to conceal their unlawful wage payment practices and to limit their liability for same.

86. Moreover, Defendants altered Plaintiffs' pay rate depending on work location, to meet minimum wage for such locations, showing Defendants' knowledge of wage laws, thus, the refusal to pay overtime can only be reasonably interpreted as willful.

## THIRD CAUSE OF ACTION
(NYLL – Wage Theft Prevention Act – Wage notice)

87. Defendants failed to provide to Plaintiff notifications of pay rate in the form and at the times directed by the NYLL Wage Theft Prevention Act ("WTPA").

88. Plaintiffs were injured by Defendants' inactions because, by failing to follow the WTPA's mandates, Defendants were able to conceal their unlawful wage payment practices by which they kept monies owed to Plaintiffs.

## FOURTH CAUSE OF ACTION
(NYLL – Wage Theft Prevention Act – Wage Statements)

89. Defendants failed to provide to Plaintiff wage statements in the form and at the times directed by the NYLL Wage Theft Prevention Act.

90. Plaintiffs were injured by Defendants' inactions because, by failing to follow the WTPA's mandates, Defendants were able to conceal their unlawful wage payment practices by which they kept monies owed to Plaintiffs.

## FIFTH CAUSE OF ACTION
(NYLL – Spread of Hours)

91. Defendants failed to pay Plaintiffs an additional one hour of minimum wage pay for each day in which Plaintiff's starting work time and ending working time exceeded 10 hours in a day.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs seek a trial by jury of all issues so triable in this action.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, overtime pay, loss of benefits, reinstatement, injunctive relief, liquidated damages (where applicable), statutory damages, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiffs are entitled. Plaintiffs demand a trial by jury.

Dated: Melville, New York
      January 9, 2023

                        FAMIGHETTI & WEINICK, PLLC
                        *Attorneys for Plaintiffs*
                        25 Melville Park Road, Suite 235
                        Melville, N.Y. 11747
                        (631) 352-0050

           By:    __/s/_Matthew Weinick_____
                     MATTHEW WEINICK